767 So.2d 219 (2000)
Charlie LESTER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KP-00228-COA.
Court of Appeals of Mississippi.
February 29, 2000.
Rehearing Denied June 27, 2000.
Certiorari Denied September 14, 2000.
*220 Stan Perkins, Greenville, Attorney for Appellant.
Office of the Attorney General by John R. Henry, Jr., Attorney for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, LEE, AND PAYNE, JJ.
LEE, J., for the Court:
¶ 1. This is an appeal from the judgment of the Circuit Court of Washington County where the appellant was found guilty of the crime of aggravated assault and sentenced to a term of ten years in the custody of the Mississippi Department of Corrections. He asserts the following as assignments of error
I. SHOULD A MISTRIAL HAVE BEEN DECLARED BECAUSE OF THE UTTERANCE OF INADMISSIBLE TESTIMONY?
II. SHOULD A MISTRIAL HAVE BEEN DECLARED BECAUSE OF THE BELATED ADMINISTRATION OF THE OATH TO THE JURY?
III. DID THE TRIAL COURT ERR IN DECLINING TO STRIKE THE TESTIMONY OF OFFICER HANEY *221 REGARDING A STATEMENT MADE TO HIM BY THE APPELLANT?
IV. WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Charlie Lester, the appellant, who worked as a licensed bondsman in Greenville for a bonding company that had posted bond for Terry Lattimore, received a telephone call informing him that Terry Lattimore was back in town and had been located. The bonding company which employed Lester had posted bond for Lattimore. A bench warrant had been issued for Lattimore, a convicted felon and habitual offender, who had missed a court appearance. The telephone call was from Lattimore's former girlfriend, Tiffany Brown. Brown had initially contacted the Greenville Police Department to pick up Lattimore; however, since the warrant was issued by the county, the police department was not able to do so.
¶ 4. Since Lester had only met Lattimore once and would not be able to identify him, Lester followed Brown in his car in order to locate Lattimore. Lattimore was walking across a park when, according to his testimony, Brown pulled up in her car behind him and slid on the brakes. Lattimore turned around and walked toward Brown's car to talk to Brown when Lester pulled beside her, jumped out of his car and aimed his pistol at him. Lattimore said that Lester did not identify himself, cursed at him, and told him that if he did not lie down on the ground that he would kill him. Lattimore claims that he made no sudden movements and did not have his hands in his pockets when Lester shot him in the right foot just below the ankle. The bullet exited on the bottom of his foot.
¶ 5. Brown's version of what transpired varies somewhat. She stated that Lester told Lattimore he was under arrest and to lie down so that he could place handcuffs on him, though she said that Lester did not identify himself to Lattimore and that she did not know if Lester presented a badge to Lattimore. She said Lattimore walked toward Lester cursing, with his hands in his pockets, when he was shot, and Lattimore never turned around. She claims that Lattimore threatened to kill both her and Lester, and that he made sudden movements toward Lester prior to the shooting.
¶ 6. Two investigating officers also testified. Officer Haney, a police officer with the Greenville Police Department at the time of the incident, testified that when he arrived at the scene of the shooting, he saw Lester with his gun pulled and pointed at a black male, whom he later identified as Lattimore. When Haney got out of his car, Lester backed away from Lattimore and put the gun in his pants. Haney then asked for the gun, and Lester gave it to him. Haney testified that Lattimore had no weapon. Another officer then arrived at the scene, placed handcuffs on Lester and read his rights to him. An ambulance had already been called for Lattimore, who was sitting on the side of the street. Haney then transported Lester to the police department. At the trial, Haney was asked if Lester said anything to him during the time he was being transported. He answered that Lester told him that he did not mean to shoot Lattimore and that he was shooting at his feet because he would not stop running from him.
¶ 7. Since no other eyewitnesses testified, these are the essential facts regarding the incident itself. The relevant testimony of Sergeant Skeen, who was in charge of the overall investigation, will be discussed as necessary in the evaluation of the issues presented as error.

ISSUES AND DISCUSSION

Standard of Review
¶ 8. Whether evidence is admissible is within the discretion of the trial *222 judge. Davis v. State, 684 So.2d 643, 661 (Miss.1996); Johnston v. State, 567 So.2d 237, 238 (Miss.1990). His decision will not be overturned on appeal unless it was an abuse of discretion. Davis, 684 So.2d at 661; Johnston, 567 So.2d at 238;. The Court will not reverse the trial court's decision merely because of an erroneous evidentiary ruling. Newsom v. State, 629 So.2d 611, 614 (Miss.1993). The appellant must show that he was effectively denied a substantial right by the ruling before a reversal can be possible. Peterson v. State, 671 So.2d 647, 656 (Miss.1996); Newsom, 629 So.2d at 614. If a constitutional right has been violated, the case must be reversed unless the Court finds that the "error was harmless beyond a reasonable doubt" upon consideration of the entire record. Newsom, 629 So.2d at 614.

I. SHOULD A MISTRIAL HAVE BEEN DECLARED BECAUSE OF THE UTTERANCE OF INADMISSIBLE TESTIMONY?
¶ 9. Sergeant Skeen, a detective with the Greenville Police Department, testified on behalf of the State. He was on duty the day of the shooting when he received a call informing him of the incident. He investigated the crime scene and took pictures that were used as evidence in the trial. During cross-examination, defense counsel asked Skeen if it was prudent for a bondsman, in the process of arresting a fleeing felon with Lattimore's record, to have his gun drawn. Skeen responded, "Neither one of the two people we're talking about have an outstanding record, so, yes, sir, you're right."
¶ 10. The appellant moved for a mistrial following this response. Though the request for a mistrial was denied, the court sustained the objection to the relevant testimony, and the jury was admonished to disregard Skeen's remark. The appellant argues that the trial judge's admonition to the jury could have left the jury with the impression that the "records" of both the defendant and Lattimore, the victim of the crime, were irrelevant. He asserts that the record of Lattimore as a fleeing felon speaks of the danger of the situation which confronted Lester and, by inference, justified Lester's need to use a gun in his apprehension of Lattimore. We believe this argument has no merit since an examination of the record clearly shows that detailed testimony was later evoked at the trial without objection regarding Lattimore's record. Testimony was given by Lattimore himself that he had been in jail for the burglary of his ex-girlfriend's house, that he was a convicted felon with multiple felony convictions, and that he had been indicted as an habitual offender. Thus, the testimony regarding Lattimore's record that the appellant complains was later embellished in the trial by both the prosecution and the defense.
¶ 11. We thus fail to see how this remark by Sergeant Steen was so damaging as to merit a mistrial. The granting of a motion for a mistrial is within the sound discretion of the trial judge. Bass v. State, 597 So.2d 182, 191 (Miss.1992). The trial judge "is in the best position for determining the prejudicial effect" of an objectionable remark. Perkins v. State, 600 So.2d 938 (Miss.1992).
¶ 12. The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared. Where "serious and irreparable damage" has not resulted, the judge should "admonish the jury then and there to disregard the impropriety." Hoops v. State, 681 So.2d 521, 528 (Miss. 1996); Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990). Under the circumstances in this instant case, no serious or irreparable damage resulted from Skeen's remarks. Furthermore, the trial judge directed the jury to ignore the inappropriate response. Since the jury is presumed to have followed the admonition of the trial judge to disregard the remark, Dennis v. State, 555 So.2d 679, 682-83 (Miss.1989), *223 there is no merit to Lester's contention that a mistrial should have been declared.

II. SHOULD A MISTRIAL HAVE BEEN DECLARED BECAUSE OF THE BELATED ADMINISTRATION OF THE OATH TO THE JURY?
¶ 13. The appellant contends that because the jury was not sworn in until after three of four witnesses had testified, a mistrial should have been granted. The appellant relies on Miller v. State, 122 Miss. 19, 84 So. 161 (1920), and Thomas v. State, 298 So.2d 690 (Miss.1974), in support of his contention that a mistrial was in order, suggesting that where the oath is not administered prior to the production of evidence, a mistrial must be declared unless the members of the jury are administered the proper oath and the presentation of evidence is begun anew. While affirming Miller, we find that Miller and Thomasare distinguishable from the case at bar in that those cases both involved capital offenses which require that a special oath be administered to the jury pursuant to Miss.Code Ann. § 13-5-73 (1972). We therefore find Stark v. State, 133 Miss. 275, 97 So. 577 (1923), involving a noncapital felony, to be controlling in this case. Starkheld that an oath administered before the jury shall retire to consider the verdict is just as valid as one administered prior to the presentation of the evidence. Id at 577-78. We also note that when the trial judge swore in the jury in the case sub judice that he expressed to them that they should have been "sworn before we started this to try the issues in this case," implying retroactivity.
¶ 14. Since the oath in this case was administered to the jurors prior to the State's having rested its case and prior to the time the jurors retired to deliberate, we find that the trial court correctly denied the motion for a retrial, relying on Stark

III. DID THE TRIAL COURT ERR IN DECLINING TO STRIKE THE TESTIMONY OF OFFICER HANEY REGARDING A STATEMENT MADE TO HIM BY THE APPELLANT?
¶ 15. The appellant asserts that the trial court erred in refusing to strike a statement made by the appellant to Officer Haney after the shooting. The statement was made during direct examination when Haney was asked if Lattimore said anything to him during the time that he was being transported to the police department from the scene of the shooting. Haney answered, "The only thing he said is that he didn't mean to shoot him, that he had was shooting at his feet because he wouldn't stop running from him."
¶ 16. The record shows that the appellant entered no contemporaneous objection to this testimony, rather, it was only after the appellant cross-examined the witness in regard to this statement that he moved to strike the statement. Because the appellant did not make a contemporaneous objection, the issue is barred for review. The failure to make a contemporaneous objection waives the right of raising the issue on appeal. Ballenger v. State, 667 So.2d 1242, 1259 (Miss. 1995).

IV. WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 17. Where the weight of the evidence, as opposed to the sufficiency, is challenged, the jury's verdict is vacated on grounds relative to the weight of the evidence so that a new trial is granted as opposed to final discharge. May v. State, 460 So.2d 778, 781 (Miss.1984). In determining whether a jury verdict is against the overwhelming weight of the evidence the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). Only when the verdict is so contrary to the overwhelming weight of the evidence that *224 to allow it to stand would sanction an unconscionable injustice will it be disturbed on appeal. Benson v. State, 551 So.2d 188, 193 (Miss.1989) (citing McFee v. State, 511 So.2d 130, 133-34 (Miss.1987)). It has been said that on a motion for new trial the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. United States v. Sinclair, 438 F.2d 50, 51 n. 1 (5th Cir.1971). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Mitchell v. State, 572 So.2d 865, 867 (Miss.1990).
¶ 18. The only actual defenses offered by the appellant were those of selfdefense and duress. Though he cites Taylor v. Taintor, 83 U.S. 366, 21 L.Ed. 287 (1872), in support of his apparent claim that the appellant had the authority or privilege to shoot his principal in order to seize him, we find no authority to this effect and will not address the related issues regarding whether the means and force used by the appellant were reasonable. As for his claim of duress, we do not find that the appellant has established an evidentiary basis for it. Jackson v. State, 645 So.2d 921, 924 (Miss.1994). The elements of this defense are prescribed in West v. State, 725 So.2d 872 (Miss.1998), and consist of the following components: (1) that the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or negligently placed himself in the situation; (3) that he had no reasonable legal alternative to violating the law; and (4) that a direct causal relationship may be reasonably anticipated between the criminal action and the avoidance of harm. Finding that there was no evidence whatsoever presented on the first, third, and fourth elements, we conclude that there is no error in the trial court's failure to grant a new trial on the basis of duress.
¶ 19. In reviewing the appellant's assertion of self-defense, we see that Tiffany Brown's version of what transpired when Lattimore was shot varies somewhat from Lattimore's version. Construing the evidence presented at the trial in the light most favorable to the verdict, as we are required, we find that the only evidence presented regarding the shooting itself was the testimony of Brown and Lattimore, the only two eyewitnesses to the shooting who testified. The two versions of what transpired have already been discussed, and it was for the jury to weigh the credibility of the witnesses and their testimony. It was solely within the province of the jury to determine which aspects of the testimony were to be believed. McClain v. State, 625 So.2d 774, 781 (Miss. 1993). The facts demonstrate that the appellant stopped his car, confronted Lattimore, and began firing. There is nothing to show that the appellant was confronted with serious bodily injury or death. No weapon was found on Lattimore. The jury may well have believed that Brown's testimony was biased in favor of the appellant in view of the fact that she was frightened of Lattimore and that the appellant came to her rescue. We find that Lattimore's testimony, if accepted as true, which includes the presentation of the entrance and exit wounds to Lattimore's right foot and evidence inferred as to the trajectory of the bullet, was adequate to support the verdict, that is, that Lester was not acting in self-defense when he shot Lattimore. We find no merit to this error.

CONCLUSION
¶ 20. We conclude that there was no reversible error committed by the lower court in failing to declare a mistrial because of the utterance of inadmissible testimony or the belated administration of the oath to the jury. We also find no reversible error in the court's failure to strike *225 the statement made by Officer Haney, or in its failure to grant a new trial on the grounds that the verdict was against the overwhelming weight of the evidence. We therefore affirm.
¶ 21. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.